# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| WILLIAM R. MILLER, II, #32636-018 | * | |
| Petitioner | * | |
| v | * | Civil Action No. CCB-10-2329 |
| TYRONE CROWDER, Warden<br>  Maryland Reception & Diagnostic<br>  Classification Center<br>     and | *<br><br>*<br><br> | |
| GARY MAYNARD, Secretary<br>  Maryland Department of Public<br>  Safety. | *<br><br>* | |
| Respondents | * | |

***

## MEMORANDUM

Pending is self-represented inmate William R. Miller's (Miller) [1] hybrid civil rights complaint and habeas corpus petition.[2] Defendants Tyrone Crowder, Warden of the Maryland Reception, Diagnostic and Classification Center (MRDCC) and Gary Maynard, Secretary of the Maryland Department of Public Safety, by their counsel, have filed a Motion to Dismiss or, in the Alternative, Motion for Summary Judgment. ECF No. 12. Miller has filed a reply. ECF No. 15. The matter is briefed and ready for disposition; a hearing is deemed unnecessary. *See* Local Rule 105.6. For reasons to follow, summary judgment shall be granted in favor of defendants.

### I.     BACKGROUND

---

[1]  At the time he initiated this case, Miller was confined at MRDCC. He is presently incarcerated at the Federal Correctional Institution in Morgantown, West Virginia. *See* Federal Bureau of Prisons Inmate Finder at: http://www.bop.gov/iloc2.

[2]  Miller filed this action on a pre-printed petition form for habeas proceedings under 28 U.S.C. § 2241. The court is mindful that Miller is a self-represented litigant and accords the pleading liberal interpretation. *See Erickson v. Pardus*, 551 U.S. 89, 93 (2007).

Miller is a federal prisoner who was brought to MRDCC on July 23, 2010, under temporary custody as a "federal plus man"[3] in order to appear for trial court in Anne Arundel County. Resp. Ex. 1, Declaration of Warden Tyrone Crowder, p. 1; *see also* Pet. Ex. 3. The majority of Miller's claims arose because of problems caused by:1) an incompatibility between his federal identification number and the state electronic information system, and 2) confusion as to whether Miller's transportation to court was the responsibility of the state or federal authorities. After these problems were brought to the attention of Warden Crowder, they were investigated and resolved.

A. FACTS

**1. Identification Number and Transportation**

Miller missed court appearances in the Circuit Court of Anne Arundel County on August 2, 2010, and August 16, 2010, due to incompatibility between his federal inmate number (32636-018) and the state's electronic information system. *See* Resp. Ex. 1, p. 1. As a result of this incompatibility, the MRDCC was unable to retrieve information pertaining to Miller. *See id*.

On August 10, 2010, Miller's attorney Stuart O. Simms sent a letter to Warden Crowder, stating that: 1) Miller had been denied a visit by his wife because MRDCC officials advised her he was not there; 2) Miller was sent to MRDCC from a federal facility with medication and had not seen a physician or received his medications; and 3) Miller was scheduled for an August 16, 2010 arraignment in the Circuit Court for Anne Arundel County.[4] Pet. Ex. 4. Mr. Simms added that there appeared to be an unresolved issue as to whether Miller's transportation to state court was the

---

[3] The term "federal plus man" is used by state corrections officials to describe a federal inmate who is transferred to a state facility on a temporary basis, usually for the purpose of appearing before a state court. Miller was brought to MRDCC for temporary custody so that a state writ for 2003 charges could be satisfied. *See* Resp. Ex. 1, p 4 (letter from Assistant Commissioner Felicia Hinton).

[4] Mr. Simms indicated that he had been approved to visit with Miller. He did not state that he had been refused the opportunity to meet with his client.

2

responsibility of state or federal personnel. Mr. Simms noted that Miller had already missed one court appearance. *See id*.

On August 17, 2010, Warden Crowder responded to Mr. Simms in a letter which stated: 1) Miller would be allowed visits in accordance with MRDCC policy for federal inmates, and visits were permitted on Saturdays and Sundays; 2) Miller was seen by medical personnel on July 29, 2010, and could submit a sick call slip for any future concerns; and 3) there was no information through the state system regarding Miller and MRDCC did not have access to his case files. The Warden stated that MRDCC had no information about the writ to Anne Arundel County, and the federal liaison had been contacted. Resp. Ex. 10.

After these problems were brought to the attention of Warden Crowder, a compatible number was assigned to Mr. Miller for use during his custody at MRDCC. Resp. Ex. 1, Decl. of Warden Crowder, p. 1. MRDCC was then able to track writs and access information pertaining to Miller in the state electronic system by using the new federal number, ML1008. *See id*.

By letter dated August 23, 2010, Felicia Hinton, Assistant Commissioner, informed Miller that he had been assigned a new identification number to comport with the state electronic system. She also noted that Miller was permitted three attorney calls the week of August 2, 2010 and three attorney calls the week of August 9, 2010. Resp. Ex. 1, p 4.

Based on policy, MRDCC made no arrangements to transport inmate Miller to court. Resp. Ex.1, Decl. of Warden Crowder, p. 2. After Warden Crowder was advised of the problem, it was investigated and determined that Miller's transportation to court was the responsibility of the state's transportation unit. After that, no other court dates were missed. *See id.*

## 2. MRDCC

Miller was seen by medical personnel while at MRDCC,[5] where he had the same access to medical services as all MRDCC inmates. *See id*. He was permitted to submit requests to be seen by the medical department as needed. *See* Resp. Ex. 1, pp.1-41 ¶ B.2, 1-51 ¶ 7 (policy stating that medical staff provide the same medical treatment and services to federal detainees and Division of Correction inmates).

MRDCC is a maximum security intake facility that transfers inmates to maintaining facilities after evaluation and classification. As such, its operation is structured differently from other facilities and offers limited programs and privileges, including for one to two hours of out-of-cell activity for inmates. Resp. Ex. 1, Decl. of Warden Crowder, p. 2. The facility is not set up for library services, legal or otherwise. *See id.* Miller was not permitted to participate in group religious activities, but could request religious materials from the chaplain and was allowed unlimited chaplain visits. *See id*; *see also* Resp. Ex. 1, p.1-51 ¶¶ 8 and 9. Pursuant to policy, MRDCC does not classify or transfer federal inmates. Resp. Ex. 1, p. 2.

The orientation information given to federal detainees states that visits may occur on Saturdays or Sundays. Resp. Ex. 1, p.1-45. A federal detainee may telephone his attorney collect daily between 8:30 am and 10:30 am and make other arrangements if the attorney does not accept collect calls. *See id*. p. 1-46. Outgoing mail is generally unlimited and an indigent detainee may mail seven pieces of personal mail per week by regular postage and all legal mail as necessary. *See id.* p. 1-47. Legal services are normally not supplied, but if a detainee is required to remain at

---

[5] Miller was seen by medical personnel for screening on July 28, 2010. Resp. Ex. 1, pp.1-6 to 1-9. He failed to show for an appointment on September 15, 2010. Resp. Ex.1, p.1-10. There are physician's notes requesting a chair for Miller's cell dated September 24, 2010. Resp. Ex.1, p. 1-11. Miller saw medical personnel on October 27, 2010, when he was issued a pass for a bottom bunk and his medication was noted. Resp. Ex. 1, p. 1-13. On November 8, 2010, Miller was seen by a psychiatrist, Dr. Annette L. Hanson, for anxiety. Resp. Ex.1, p. 1-14. The medical record reveals that Miller's thought processes were observed as logical and unremarkable. Resp. Ex. 1-14.

MRDCC efforts will be made to meet his need for legal services. *See id*. p. 1-49. Legal cases are available upon request. *See id*. p. 1-50. Legal and clergy visits are unlimited. *See id*. p. 1-51¶ 8. Prisoner complaints "can be processed through the housing officer to the day shift commander by completing a DC Form 185-100aR (Informal Inmate Complaint Form)." *Iid*. p. 50.

### 3. Legal Representation

Warden Crowder was in regular communication via email with Miller's appellate counsel, Kenneth Sukhia, Esq., to arrange for Miller to handle legal matters such as sending faxes, making phone calls, and reviewing briefs sent via email. Resp. Ex. 1, pp 1-16 to 1-40.[6] Mr. Sukhia represented Miller in his cases before the Court of Appeals for the Eleventh Circuit, *USA v. Miller*, 09-13285-GG, 10-12969-G, 10-12348G; Resp. Ex. 2-4; *see infra*, n. 8. Miller acknowledged that "this assistance has helped [Miller] meet deadlines relative to his federal court proceedings." Pet. Reply, p. 3. Miller was also represented by counsel in the state criminal case in the Circuit Court for Anne Arundel County, Case No. 02K09002595. Resp. Ex. 5.[7]

### II. MILLER'S CLAIMS

Miller complains that MRDCC failed to: 1) properly classify him; 2) provide him with proper medical care and medication; 3) transport him to court in Anne Arundel County for state court proceedings; 4) deliver his mail; and 5) provide him with access to the courts. Further, he alleges: 5) the Justice Department did not authorize his custody in Baltimore City, only Anne Arundel County; 6) he was subjected to racial discrimination and slurs by Officer Johnson;

---

[6] Warden Crowder and Mr. Sukhia communicated from October 4, 2010, until November 12, 2010, about Miller's receipt of attorney telephone calls and faxes. Resp. Ex. 1-16 to 1-40. Counsel indicated that he was representing Miller in his appeals in the Eleventh Circuit. Resp. Ex. 1, p.1-39. Counsel filed briefs the week of October 13, 2010, on behalf of Miller. Resp. Ex.1, p. 1-25.

[7] Miller was represented by Michael Morrissette, Esq, an assistant public defender. Resp. Ex. 5. On January 10, 2011, Miller pleaded guilty to misappropriation by fiduciary and was sentenced to one year of imprisonment in the Anne Arundel County Detention Center, with credit for one-year time served. The remaining charges were *nolle prosequi*. *See* Case No. 02K09002595, Maryland Judiciary Casesearch: http://casesearch.courts.state.md.us/inquiry.

7) he was denied visits from his attorney and family; and 8) he was denied the opportunity to avail himself of the ARP process. Pet. Ex. 1. He claims the conditions at MRDCC are cruel and unusual. Miller also maintains that he missed deadlines in his appeal in the Eleventh Circuit and in his bankruptcy case in the District of Maryland.[8] Lastly, he wants the $50.00 he allegedly paid to the commissary before he was advised that he could not order items because his name was not in the system. Pet. Ex. 1.

As redress, Miller seeks adequate access to the courts, his counsel, and a law library, medical care, proper delivery of his mail, visits from his family and clergy, phone calls from his counsel, and transportation to court. Pet. Ex. 1, p. 5. Additionally, he asked to be classified as a minimum security inmate commensurate with his federal status and placed in the general prison population.[9]

### III. STANDARD OF REVIEW

Rule 56(a) & (c) of the Federal Rules of Civil Procedure provides:

> A party may move for summary judgment, identifying each claim or defense--or the part of each claim or defense--on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. The court should state on the record the reasons for granting or denying the motion.

---

[8] Miller's federal convictions for fraud were affirmed on appeal. *See United States v. Miller*, 2011 WL 2584233 (11th Cir. June 30, 2011). The Eleventh Circuit affirmed in part, reversed in part, and dismissed in part the denial of his motion to vacate his plea agreement. *See United States v. Miller*, 2011 WL 2584185 (11th Cir. June 30, 2011).
Miller was also involved in bankruptcy case 09-20691 (Bankr. D. Md.). The Pacer system shows the debtor undergoing Chapter 11 proceeding was River Hill Sports Grille, Inc. *See* ht.tps://ecf.mdb.uscourts.gov/cgi-bin/DktRpt. Miller is the owner of the debtor corporation. Pet. Reply, p. 5. River Hill Sports Grille, Inc. was represented by Alan M. Grochal, Esq. *See id.* Miller also claims involvement in two cases that were consolidated in the District Court of Maryland, Case Numbers 0702-17997-09 (District Court- Glen Burnie) and 0702-1731-09. Pet. Ex. 1, p. 2. Review of the Maryland Judiciary Casesearch website shows no state district court case with the latter number. Case number 0702-17997-09 involved a civil contract action.

[9] Miller's transfer to FCI Morgantown renders moot his claims for injunctive relief. *See Rendelman v. Rouse,* 569 F.3d 182, 186 (4th Cir. 2009) (citing *Incumaa v. Ozmint*, 507 F. 3d 281, 286-87 (4th Cir. 2007)). The case is dismissible on this basis.

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

This does not mean that any factual dispute will defeat the motion:

> By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact.

*Anderson v. Liberty Lobby, Inc*., 477 U. S. 242, 247-48 (1986) (emphasis in original).

The party seeking summary judgment bears an initial burden of demonstrating the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). Once the moving party has met that burden, the non-moving party must come forward and demonstrate that such an issue does, in fact, exist. *See Matsushita Elec. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986).* "A party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc*., 346 F.3d 514, 525 (4th Cir. 2003) (quoting Fed. R. Civ. P. 56(e)); *see also Rivanna Trawlers Unlimited v. Thompson Trawlers, Inc.*, 840 F.2d 236, 240 (4th Cir. 1988).

The court generally must view all facts and draw all reasonable inferences in the light most favorable to the nonmoving party. *See Scott v. Harris,* 550 U.S. 372, 378 (2007). However, "facts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts." *Id.* at 380.

IV. **DISCUSSION**

1. **Respondeat Superior**

Apart from naming Secretary Gary Maynard as a respondent, Miller does not claim Secretary Maynard had personal involvement in the matters at issue. The law is well established that the doctrine of respondeat superior does not apply in § 1983 claims.[10] *See Monell v. New York Dep't of Social Services*, 436 U.S. 658, 691 (1978); *Love–Lane v. Martin*, 355 F.3d 766, 782 (4th Cir. 2004). Insofar as Miller might seek liability under a theory of supervisory liability, his claims are unavailing. Supervisory liability under § 1983 must be supported with evidence that: (1) the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to citizens like the plaintiff; (2) the supervisor's response to the knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive practices; and (3) there was an affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff. *See Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994). Miller does not allege Secretary Maynard had actual or constructive knowledge of the incidents in question and there are no grounds for assigning supervisory liability. Accordingly, the claims against Secretary Gary Maynard shall be dismissed.

### 2. Classification

Miller's first claim is that respondents failed to properly classify him. Pet. Ex. 1, p. 1. A classification decision or a transfer from one prison facility to another does not implicate a protected liberty interest or state a claim under § 1983. *See Meachum v. Fano*, 427 U.S. 215 (1976); *Paoli v. Lally*, 812 F.2d 1489, 1492-93 (4th Cir. 1987). A prisoner has no liberty interest in being housed in any particular facility. *See Olim v. Wakinekona*, 461 U.S. 238, 244-45 (1983). Miller has no right to be assigned to a particular security classification or a corrections facility. He has failed to state a

---

[10] Respondeat superior is a legal doctrine whereby an employer may be held responsible for its employees.

cognizable claim for federal habeas relief or a cause of action under § 1983. Consequently, the claim will be dismissed.

### 3. Medical Care

The government is "obligat[ed] to provide medical care for those whom it is punishing by incarceration." *Estelle v. Gamble*, 429 U.S. 97, 103 (1976). When prison officials show "deliberate indifference" to a prisoner's "serious medical needs," their actions or omissions give rise to an Eighth Amendment violation. *Id.* at 104. The prison official "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). The medical treatment provided "must be so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *Miltier v. Beorn*, 896 F.2d 848, 851 (4th Cir. 1990).

Miller fails to demonstrate that respondents acted with deliberate indifference to his serious medical needs. Indeed, once alerted to Miller's complaints, Warden Crowder initiated an investigation and resolved the difficulties. Resp. Ex. 9. The record shows that Miller received medical care and was in fact entitled to the same access to medical care provided to state prisoners. For this reason, there is no genuine issue of material fact and summary judgment will be granted in favor of defendants.

### 4. Access to the Courts

#### a. Prejudice

Inmates are entitled to "a reasonably adequate opportunity to present claimed violations of fundamental constitutional rights to the courts." *Bounds v. Smith*, 430 U.S. 817, 825 (1977); *see also Hudspeth v. Figgins*, 584 F.2d 1345, 1347 (4th Cir. 1978). The Supreme Court clarified the *Bounds* decision by finding that a deprivation of an inmate's right of access to the courts is

9

actionable, but only when the inmate is able to demonstrate actual injury from such deprivation. *See Lewis v. Casey*, 518 U.S. 343, 349 (1996); *see also O'Dell v. Netherland*, 112 F.3d 773, 776 (4th Cir. 1997) ("[A]prisoner wishing to establish an unconstitutional burden on his right of access to the courts must show actual injury to the capability of bringing contemplated challenges to sentences or conditions of confinement before the courts.") (internal quotation marks omitted).

It is undisputed that Miller missed two court dates before it was determined that state corrections officials were responsible for bringing Miller to court in Anne Arundel County. Respondents counter, however, that that Miller's criminal defense was not prejudiced by the two delays, he was represented at his appearances by counsel, and the cases were continued after he failed to appear. Resp. Ex. 5. In the absence of facts otherwise, the court agrees no prejudice is shown.

               b.   Access to Law Library

Where, as here, a prisoner is represented by counsel, such representation can constitute a valid means of satisfying a prisoner's right to access-to-courts. *See Bourdon v Loughren*, 386 F.3d 88, 94 (2d Cir. 2004) (holding the appointment of counsel can be a valid means of satisfying a state's constitutional obligation to provide prisoners with access to the courts); *Hause v. Vaught*, 993 F.2d 1079, 1084 (4th Cir. 1993) (stating meaningful access to the courts "can be satisfied either by providing prisoners with adequate law libraries or with adequate assistance from persons trained in the law"); *Peterkin v. Jeffes*, 855 F.2d 1021, 1042 (3d Cir. 1988) (interpreting *Bounds* to hold that providing counsel is one means by which a state may provide prisoners with meaningful access to the courts); *United States v. Wilson*, 690 F.2d 1267, 1272 (9th Cir. 1982) (court-appointed counsel satisfies the right to meaningful access to the courts); *Cruz v. Hauck*, 515 F. 2d 322, 331 (5th Cir. 1975) (holding "access to the courts may be satisfied either by availability of legal materials, by

counsel, or by any other appropriate device of the State"). As earlier noted, Miller was represented by counsel in his appeals in the Eleventh Circuit, in bankruptcy proceedings in the District of Maryland, and in his criminal proceeding in the Circuit Court for Anne Arundel County. *See supra*, notes 7 and 8.

      c. Mail Delivery

Miller's claim that improper delivery of his mail caused him to missed a deadline for submitting a brief in the Court of Appeals for the Eleventh Circuit is unsupported by the record or his attorney's statement that briefs were filed in his cases. Resp. Ex. 2-4 and 1-25. Similarly unavailing is Miller's claim that he missed a deadline in his a state court contract case. Pet Reply, p. 5; *see supra*, note 8. Assuming arguendo that Miller missed a deadline, neither Miller nor the record demonstrate prejudice to Miller. Miller blames the fact that he was required to "forfeit over $18,000" in the state court contract case, not to a missed filing deadline, but to his physical absence from the proceeding.[11]

Miller's claim that he was denied attorney visits is unsubstantiated. In fact, the record is clear that Miller was permitted telephone calls to counsel and was assisted by prison personnel in contacting his attorney. Miller fails to specify what mail was allegedly misdelivered to him or how this alleged error caused him to miss any filing deadlines. Most importantly, he fails to demonstrate that he suffered any prejudice as a result. For these reasons, Miller fails to demonstrate that he was deprived of access-to-courts and summary judgment will be entered in favor of respondents as to this claim.

    **5. Visiting Privileges**

---

[11] Miller identifies no right that he would have had to compel prison officials to transport him to a civil contract proceeding.

Inmates and their visitors do not have a constitutional right to prison visitation. *See White v. Keller*, 438 F. Supp. 110 (D. Md. 1977), *aff'd*, 588 F.2d 913 (4th Cir.1978). Miller was assured by letter dated August 17, 2010, to Stuart O. Simms, Esq., that he could have visitors on Saturdays or Sundays. Resp. Ex. 10. There is no violation of constitutional dimension and summary judgment in favor of respondents will be granted.

### 6. Commissary

Miller claims that he paid $50.00 to the MRDCC Commissary by submitting a money order. The Commissary could not find Miller's name in its electronic system and was unable to permit him commissary service. Pet. Ex. 8. Miller wants his money returned. Maryland law provides sufficient due process by affording inmates an adequate post-deprivation remedy for loss of property. *See Parratt v. Taylor*, 451 U.S. 527, 542-44 (1981), overruled on other grounds by *Daniels v. Williams*, 474 U.S. 327 (1986). Consequently, this claim will be dismissed.[12]

### 7. Racial Slurs

Miller claims that he was subjected to racial slurs and discrimination by Officer Johnson. He does not provide specific details about the comments or the circumstances during which they were made. Comments that may constitute verbal abuse or harassment do not alone rise to the level of an Eighth Amendment violation. *See Collins v. Cundy*, 603 F.2d 825, 827 (10th Cir. 1979), cited favorably in *Moody v. Grove*, 885 F.2d 865 (4th Cir. 1989) (table) (unpublished) (stating as a general rule that verbal abuse of inmates by guards, without more, does not state a constitutional claim). The Constitution does not "protect against all intrusions on one's peace of mind." *Pittsley v.*

---

[12] Redress may be sought through the Maryland Tort Claims Act. *See* Md.Code Ann., State Gov't, §§ 12-101, *et seq*.

*Warish*, 927 F.2d 3, 7 (1st Cir. 1991). Verbal harassment or idle threats to an inmate, even to an extent that it causes an inmate fear or emotional anxiety, do not constitute an invasion of any identified liberty interest. *See Emmons v. McLaughlin*, 874 F.2d 351, 353 (6th Cir. 1989) (stating verbal threats causing fear for plaintiff's life not an infringement of a constitutional right); *Martin v. Sargent*, 780 F.2d 1334, 1338 (8th Cir. 1985) (calling an inmate an obscene name did not violate constitutional rights); *Lamar v. Steele*, 698 F.2d 1286 (5th Cir. 1983) ("Threats alone are not enough. A [§] 1983 claim only accrues when the threats or threatening conduct result in a constitutional deprivation.").

Use of racial slurs and abusive language is vile, reprehensible, and unprofessional. It does not, however, form the basis for a § 1983 claim. Under the facts alleged, there are no grounds to find a constitutional violation. Respondents are entitled to summary judgment as to this claim as a matter of law.

### 8. Conditions of Confinement

The Eighth Amendment proscribes conditions that result in an unnecessary and wanton infliction of pain, including practices that are "totally without penological justification." *Rhodes v. Chapman*, 452 U.S. 337, 346 (1981). The Supreme Court has held that

> [A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

*Farmer v. Brennan*, 511 U.S. 825, 837 (1994); *see also Rich v. Bruce*, 129 F.3d 336, 339-40 (4th Cir. 1997). In order to state a conditions of confinement claim, a prisoner must show a serious or significant mental or physical injury as a result of the challenged conditions. *See Strickler v. Waters*, 989 F.2d 1375, 1380-81 (4th Cir. 1993).

13

Miller states in his reply that Nurse Jones and other medical staff refused him nebulizer treatments when he "was experiencing trauma through his asthma attacks." Pet. Reply, p. 4. Neither Nurse Jones nor any other medical providers is named as a party to this case.[13] Miller does not allege that either Secretary Maynard or Warden Crowder personally participated in his medical treatment nor deliberately acted to interfere with his medical treatment. To the extent any delay in treatment might be attributed to the incompatibility of Miller's federal identification number, the matter was resolved by prison authorities when the problem was brought to their attention.

In his reply, Miller also complains: 1) MRDCC was infested with vermin; 2) the showers were contaminated with mold which aggravated his asthma; 3) there was inadequate hot water for showers; 4) the cells were cold and extra blankets were not provided; and 5) there were no religious services. Miller provides no evidence to support his averment that his asthma was aggravated because of mold in the showers or that other conditions caused him serious injury. Not only has Miller failed to demonstrate serious injury, but there is no allegation that either respondents knew of or subjectively disregarded a serious risk of harm to his safety. This claim provides no grounds for relief. Summary judgment will be entered in favor of respondents.

### 9. Administrative Remedy Process

Miller alleges Officer Darden told him that there was no administrative remedy process available to him at MRDCC because of his federal prisoner status.[14] There is no constitutional right to an administrative or other grievance process or to participate in one voluntarily established by the state. *See Adams v. Rice*, 40 F. 3d 72, 75 (4th Cir. 1994). Miller has not named Officer Darden as a party to this action, and neither respondent is alleged to have had any personal involvement in this

---

[13] Miller may raise his claims against the medical providers in a separate complaint. The Clerk will send him a prisoner civil rights information and forms packet in the event he intends to so proceed.
[14] As earlier noted, there is a grievance process provided to federal detainees. *See supra*, p. 5.

matter. There are no grounds to base a finding of supervisory liability. No genuine issues of material fact are in dispute and summary judgment will be entered in favor of respondents.

## V. CONCLUSION

Having found no genuine dispute of material fact justifying a trial on the merits of this case, the court shall grant respondents' motion for summary judgment. The court declines to issue a certificate of appealability because Miller has not made a substantial showing of the denial of a constitutional right. *See* 28 U.S.C. § 2253(c)(2). A separate order follows.


<u>September 26, 2011</u>                                            <u>/s/                                    </u>
Date                                                                            Catherine C. Blake
                                                                                    United States District Judge